Filed 5/17/22  P. v. Estrada CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B312352 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA076269) |
| v. | |
| ERICA MICHELLE ESTRADA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Scott T. Millington, Judge.  Reversed and remanded with directions.

Law Office of Stein and Markus, Andrew M. Stein and Joseph A. Markus; Brentford Ferreira Attorney at Law and Brentford Ferreira, for Defendant and Appellant.

Rob Bonta, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

---

## INTRODUCTION

Appellant Erica Michelle Estrada appeals from the trial court's denial of her petition under Penal Code section 1170.95 to vacate her murder conviction.[1]  In 2013, a jury convicted appellant of felony murder and found true a robbery-murder allegation under section 190.2 (the special circumstance statute).  During the pendency of appellant's direct appeal, our Supreme Court clarified the meaning of the special circumstance statute in *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*).  We affirmed the judgment, holding, inter alia, that the special circumstance finding was supported by substantial evidence under *Banks*.  (*People v. Gonzalez* (2016) 246 Cal.App.4th 1358 (*Gonzalez I*).)  Our Supreme Court granted review on an issue immaterial to this appeal, and affirmed.  (*People v. Gonzalez* (2018) 5 Cal.5th 186 (*Gonzalez II*).)

After the enactment of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437), which narrowed the felony murder rule by incorporating the special circumstance statute's

---

[1]     Undesignated statutory references are to the Penal Code.

2

requirement that the defendant at least have been a major participant in the underlying felony and have acted with reckless indifference to human life, appellant filed a petition for resentencing under section 1170.95, alleging she was not guilty of murder in the wake of SB 1437. Without issuing an order to show cause, the trial court denied the petition, reasoning that (1) the jury's robbery-murder special circumstance finding precluded relief as a matter of law, by establishing that appellant at least had been a major participant in the robbery and had acted with reckless indifference to human life; and (2) although some cases had held that a pre-*Banks* special circumstance finding alone could not preclude relief under Section 1170.95, those cases were inapposite in light of our holding in *Gonzalez I* that the special circumstance finding was supported by substantial evidence under *Banks*.

On appeal, appellant contends the court erred in denying her petition without issuing an order to show cause. The Attorney General disagrees, arguing the special circumstance finding precluded relief as a matter of law, either alone or in conjunction with our substantial-evidence holding in *Gonzalez I*. In the alternative, the Attorney General argues we should deem any error harmless by making a new finding of substantial evidence under *Banks* on this appeal.

We conclude the court erred, as neither the jury's pre-*Banks* special circumstance finding nor our opinion in *Gonzalez I* refuted, as a matter of law, appellant's

3

allegations that she was not a major participant in the robbery and did not act with reckless indifference to human life within the meaning of the special circumstance statute as clarified in *Banks*. We further conclude the error was not harmless regardless of whether the trial record contains substantial evidence under *Banks*, as a finding of substantial evidence of appellant's guilt under a still-valid theory of murder is insufficient to render her ineligible for resentencing under section 1170.95. Accordingly, we reverse the order denying appellant's petition, and remand the matter to the trial court with directions to issue an order to show cause and proceed in accordance with section 1170.95.

## BACKGROUND

In 2009, Victor Rosales died from a single gunshot wound to the chest. (*Gonzalez I, supra*, 246 Cal.App.4th at 1367-1368.) The People charged appellant and two codefendants -- Jorge Gonzalez and Alfonso Garcia -- with Rosales's murder. (*Id.* at 1363.) The People alleged that a principal was armed with a firearm during the murder, and that the murder was committed during the commission of a robbery. (*Ibid.*) With respect to codefendant Gonzalez alone, the People brought an additional charge of shooting at an occupied motor vehicle, and an additional allegation of causing death by personally and intentionally discharging a firearm. (*Ibid.*)

4

### A. Trial Evidence

The prosecution's primary evidence concerning the shooting of Rosales consisted of pretrial statements made shortly after the shooting by his friend Alejandro Ruiz, who did not testify. (*Gonzalez I*, *supra*, 246 Cal.App.4th at 1367, 1371.) Rosales's mother and two sisters testified that Ruiz made statements indicating appellant (Rosales's girlfriend) was responsible for the shooting in some unspecified manner. (*Id.* at 1366-1367.) More specific statements by Ruiz were introduced through the testimony of Inglewood Police Officer Fernando Vasquez, who interviewed Ruiz upon responding to a 911 call about the shooting. (*Id.* at 1367.) Ruiz told the officer that about 20 minutes before the 911 call, he drove to Rosales's house to pick up Rosales, who said appellant had asked to meet at a nearby laundromat to get lunch. (*Id.* at 1367.) Ruiz drove Rosales to the laundromat. (*Ibid.*) "[Ruiz] recognized [appellant], accompanied by two male Hispanics, walking out from behind two palm trees. [Appellant] pointed at Rosales, and one of the males walked up to the passenger side door, produced a small handgun, and fired a single shot at Rosales." (*Ibid.*) The shooter tried to pull Ruiz out of the car, but Ruiz quickly drove away, back to Rosales's house. (*Ibid.*) Officer Vasquez testified that on the evening of the shooting, he arrested appellant and Gonzalez outside appellant's house. (*Ibid.*)

The prosecution's primary evidence concerning the defendants' intent to rob Rosales consisted of the testimony of potential accomplice Anthony Stephen Kalac, who

testified after invoking his privilege against self-incrimination and being granted use immunity. (*Gonzalez I*, *supra*, 246 Cal.App.4th at 1364, 1374.) Kalac testified that on the day of the shooting, he joined appellant, codefendant Gonzalez, codefendant Garcia, and Garcia's girlfriend in a room at the Crystal Inn (across the street from the laundromat where the shooting took place). (*Id.* at 1364.) Appellant, Garcia, and Gonzalez discussed where they could obtain drugs. (*Ibid.*) During this discussion, appellant told Garcia and Gonzalez that she knew someone (Rosales) they could "'come up on,'" which Kalac understood to mean "'rob.'" (*Ibid.*) Appellant said Rosales was a drug dealer who had been "'physical'" (violent) with her. (*Ibid.*) "On cross-examination, Kalac admitted that part of the conversation among Gonzalez, [appellant], and Garcia about where to obtain drugs had taken place in Spanish, a language he does not understand. Kalac testified that the only part of defendants' conversation that was in English was about '[w]here they were meeting basically and how long.'" (*Gonzalez II*, *supra*, 5 Cal.5th at 210 (dis. opn. of Liu, J.).) Kalac also admitted he was high on heroin during the conversation. (*Id.* at 193 (maj. opn. of Cuéllar, J.); *id.* at 211 (dis. opn. of Liu, J.).)

Kalac further testified that appellant called Rosales, asked him to sell her drugs, and told him to meet at the laundromat. (*Gonzalez I*, *supra*, 246 Cal.App.4th at 1364.) Garcia said he would act as lookout, and left the Crystal Inn with Gonzalez. (*Id.* at 1365.) Appellant, assisted by Garcia's

girlfriend and Kalac, relocated to a nearby hotel. (*Ibid.*) Appellant left Kalac alone in the new hotel. (*Ibid.*) Kalac started walking home, and encountered Garcia and Gonzalez, who told him "'shit went bad.'" (*Ibid.*) Kalac testified that he never saw a gun. (*Ibid.*) However, Kalac's ex-girlfriend told police that Garcia gave Kalac the gun that had been used in the shooting. (*Id.* at 1365-1366.)

Neither appellant nor Garcia testified. (*Gonzalez I*, *supra*, 246 Cal.App.4th at 1371.) Gonzalez testified he was with appellant, Garcia, and Kalac at the Crystal Inn on the day of the shooting, but they did not plan to rob Rosales; instead, at Gonzalez's request, appellant arranged to buy drugs from Rosales. (*Id.* at 1369-1370.) Because the hotel manager had told them to leave, appellant relocated to a new hotel, while Gonzalez and Garcia went to the laundromat to meet Rosales. (*Id.* at 1370.) Gonzalez did not have a gun, and he had not seen any guns in the hotel room. (*Ibid.*) Outside the laundromat, Gonzalez saw Rosales sitting in a car, looking at him. (*Ibid.*) Gonzalez walked over to Rosales and greeted him twice, but Rosales did not respond, prompting Gonzalez to ask whether he should get appellant. (*Ibid.*) Rosales suddenly threatened Gonzalez with a handgun, which Gonzalez grabbed in self-defense; in the ensuing struggle for possession, the gun accidentally discharged. (*Ibid.*) Gonzalez ran away, found Garcia, and came across Kalac, to whom he gave the gun. (*Ibid.*) He joined appellant at a new hotel and accompanied her to her

house, where she introduced him to her son before the police arrived and arrested them. (*Id*. at 1370-1371.)

### *B. Judgment and Appeal*

"Aside from felony murder, the jury was not instructed on any other theory of murder." (*Gonzalez I*, *supra*, 246 Cal.App.4th at 1379.) The jury convicted all defendants of felony murder, and found true the robbery-murder special circumstance allegation. (*Id*. at 1363.) However, the jury found all the firearm allegations not true, and acquitted Gonzalez of shooting at an occupied vehicle. (*Ibid*.) Each defendant was sentenced to life imprisonment without the possibility of parole. (*Ibid*.)

On her direct appeal from the judgment, appellant contended, inter alia, that the robbery-murder special circumstance finding was not supported by substantial evidence. (*Gonzalez I*, *supra*, 246 Cal.App.4th at 1362.) During the pendency of her appeal, our Supreme Court issued its opinion in *Banks*, and we ordered supplemental briefing concerning it.[2] (*Gonzalez I*, at 1382, fn. 6.) Drawing guidance from *Banks*, and considering the record in the light most favorable to the judgment, we held the trial record contained substantial evidence that appellant was a major

---

[2]     As noted, *Banks* clarified the meaning of the special circumstance statute. After we issued our opinion in *Gonzalez I*, our Supreme Court further clarified the statute in *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*).

8

participant in the robbery and acted with reckless indifference to human life. (*Gonzalez I*, at 1382, 1385.) Implicitly presuming the jury believed Kalac's testimony about appellant's conversations in the Crystal Inn, we stated: "[Appellant] was identified as the person who first proposed robbing Rosales. When she did so, she informed Gonzalez and Garcia that Rosales was a drug dealer who had been physically violent in the past. Thus, unlike in *Banks*, there was a substantial probability the robbery would result in resistance and the need to meet that resistance with deadly force. [Appellant] then set up the robbery by calling Rosales and asking him to meet her at the laundromat. Her act of luring Rosales to the laundromat was 'critical to the robbery's success.'" (*Gonzalez I*, at 1385, quoting *People v. Lopez* (2011) 198 Cal.App.4th 1106, 1117 (*Lopez*).)[3] We further presumed the jury believed Ruiz's

---

[3] Deeming *Lopez* instructive, we summarized its relevant holding as follows: "appellant Brousseau, a prostitute, along with several codefendants, planned to rob ('com[e] up on') some of her prospective customers. [Citation.] During the encounter, the victim was shot and killed by codefendant Lopez. Brousseau . . . argued there was insufficient evidence to prove she acted with reckless indifference to human life. The appellate court disagreed. It found that 'Brousseau's act of luring the victim into the secluded alley was critical to the robbery's success. After hearing what she knew was a gunshot, she failed to help the victim or call 911.' Instead, she spent the night with her codefendants and had sex with Lopez. The appellate court found Brousseau's actions reflected an 'utter indifference to the victim's life.' [Citation.]" (*Gonzalez I*, *supra*, 246 Cal.App.4th at 1384.) *(Fn. is continued on the next page.)*

9

account of the shooting, as relayed at trial by Officer Vasquez: "[Appellant] also was identified as being at the scene, and pointing Rosales out to the shooter." (*Gonzalez I*, at 1385.) We noted we were permitted to "consider Ruiz's account of Gonzalez's use of a gun" in assessing the sufficiency of the evidence supporting the robbery-murder special circumstance allegation, notwithstanding the jury's not-true finding on the separate allegation that a principal was armed with a gun. (*Id.* at 1385, fn. 10.) Finally, we considered the evidence of appellant's actions after the shooting: "After a shot was fired, she neither called 911 to assist the victim, nor called the police to report the shooting. Rather, like Brousseau in *Lopez*, [appellant] spent the afternoon with the shooter. She took Gonzalez to her home to introduce him to her son, and was arrested with him later that evening." (*Gonzalez I*, at 1385; but see *Gonzalez II*, *supra*, 5 Cal.5th at 195 ["because Ruiz immediately drove Rosales away to an unknown location [after Rosales was shot], this is not a case where defendants' actions after the shooting [alone] constituted actions that they knew carried a grave risk of death, such as if they abandoned the dying victim at the site of the crime without calling for medical assistance"].) We concluded, "On this record, there was

---

We noted that although *Banks* had disapproved *Lopez* in part, *Lopez* remained good law to the extent it relied on evidence beyond Brousseau's knowledge that Lopez was armed. (*Gonzalez I*, at 1384, fn. 8.)

10

sufficient evidence for the jury to find that [appellant] was a major participant and acted with reckless indifference to human life." (*Gonzalez I*, at 1385.)

Our Supreme Court granted review on a different issue addressed in our opinion, viz., whether the special circumstance finding rendered harmless the trial court's failure to instruct the jury on *malice* murder (along with related defenses and lesser included offenses), as opposed to felony murder. (*Gonzalez II*, *supra*, 5 Cal.5th at 195.) The court concluded the special circumstance finding rendered the instructional omission harmless, because it necessarily reflected the jury's independent determination of the defendants' guilt of felony murder, negating any reasonable probability that the jury returned convictions merely because the instructions presented an all-or-nothing choice between felony murder and acquittal.[4] (*Id.* at 191-192, 200-201, 209.)

---

[4]    The Supreme Court recognized some ambiguity concerning the factual basis of the jury's finding of reckless indifference to human life, and did not address whether that finding satisfied the standards of *Banks* and *Clark*. (See *Gonzalez II*, *supra*, 5 Cal.5th at 208 ["What the [reckless indifference to human life] finding demonstrates -- *irrespective of the precise factual underpinnings* directly supporting the jury's special circumstance determination -- is that the jury could have found the special circumstance false [had it convicted defendants of felony murder merely because it was given an all-or-nothing choice between felony murder and acquittal], without risking apparent logical inconsistency with the felony-murder conviction" (italics added)]; *(Fn. is continued on the next page.)*

11

### C. Section 1170.95 Petition

In January 2021, appellant filed, through counsel, a petition to vacate her murder conviction under section 1170.95, alleging she could not be convicted of felony murder after SB 1437's changes to the law because: (1) she was not the actual killer; (2) she did not act with the intent to kill as an aider and abettor; and (3) she was not a major participant in the underlying robbery, and she did not act with reckless indifference to human life. Relying on *People v. Torres* (2020) 46 Cal.App.5th 1168, review granted June 24, 2020, S262011 (*Torres*) and related cases, appellant argued the jury's pre-*Banks* special circumstance finding did not refute her allegations that she was not a major participant in the robbery and did not act with reckless indifference to human life. She argued this was true despite our holding in *Gonzalez I* that the special circumstance finding was supported by substantial evidence under *Banks*. In opposition, the prosecution argued: (1) contrary to the *Torres*

---

*id.* at 207 ["Even if the jury was not persuaded that Gonzalez was armed, a perpetrator need not be armed with a weapon to create the force or fear necessary for robbery. . . . [T]he jury could have concluded Gonzalez was not armed and still found defendants had knowledge of a 'grave risk of death.' The jury may have believed, for example, that the planned commission of a violent crime such as the robbery of a drug dealer who had been physically violent towards [appellant] in the past carried a grave risk of death"]; cf. *id.* at 214 (dis. opn. of Liu, J.) [implying majority's unarmed-robbery-of-violent-drug-dealer theory was invalid under *Banks*].)

line of cases, the special circumstance finding alone precluded relief, as another line of cases had held; and (2) in any event, the *Torres* line of cases was inapposite in light of our holding in *Gonzalez I* that the special circumstance finding was supported by substantial evidence under *Banks*.

In April 2021, the trial court held a hearing to determine whether to issue an order to show cause, at which the parties generally repeated the arguments made in their briefs. The court denied appellant's petition, agreeing with the prosecution that "the jury's special circumstance finding shows as a matter of law that [appellant] could still be convicted of felony murder," and that the *Torres* line of cases was "distinguish[able]" in light of our substantial-evidence holding in *Gonzalez I*. Appellant timely appealed.

## DISCUSSION

### A. Section 1170.95

Section 1170.95 permits a defendant who was convicted of felony murder to petition the sentencing court to have the conviction vacated and to be resentenced on any remaining counts when, inter alia, the petitioner could not be convicted of murder after SB 1437's changes to the law. (See § 1170.95, subd. (a)(3).) These changes include the amendment of section 189, subdivision (e) to provide that a defendant is not guilty of felony murder unless the defendant: (1) was the actual killer; (2) acted with the intent to kill as an aider and abettor; or (3) was a major participant in the underlying felony and acted with reckless indifference

13

to human life, as described in the special circumstance statute.  (See § 189, subd. (e); Stats. 2018, ch. 1015, § 3.)

After ascertaining that the petition contains certain required information, the court must determine whether the petitioner has made a prima facie showing of entitlement to relief.  (§ 1170.95, subd. (c); *People v. Lewis* (2021) 11 Cal.5th 952, 960-968 (*Lewis*).)  "[A]t the prima facie stage, a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'"  (*Lewis*, at 974, quoting *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*).)  Because the weighing of evidence is typically required in order to determine whether a defendant was a major participant in an underlying felony and acted with reckless indifference to human life, this determination is typically inappropriate at the prima facie stage.  (See, e.g., *People v. Clayton* (2021) 66 Cal.App.5th 145, 154, review denied Sept. 15, 2021; *Drayton, supra*, 47 Cal.App.5th at 982.)  The prohibition against factfinding at the prima facie stage is subject to a limited exception:  "'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner."'"  (*Lewis, supra*, 11 Cal.5th at 971, quoting *Drayton*, at 979.)  "However, this authority to make [factual] determinations without conducting an evidentiary hearing . . . is limited to readily ascertainable facts from the record (such as the crime

14

of conviction) . . . ." (*Drayton*, at 980.) "[T]he 'prima facie bar was intentionally and correctly set very low.'" (*Lewis*, at 972.)

Where the court finds the petitioner has made a prima facie showing, it must issue an order to show cause and hold an evidentiary hearing on the petitioner's eligibility for relief. (§ 1170.95, subds. (c)-(d).) "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by [SB 1437]. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).) "The question is whether the petitioner committed murder under a still-valid theory, and that is a factual question. The Legislature made this clear by explicitly holding the People to the beyond a reasonable doubt evidentiary standard and by permitting the parties to submit new or additional evidence at the hearing on eligibility." (*People v. Clements* (2022) 75 Cal.App.5th 276, 294 (*Clements*).) "A finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing."[5] (§ 1170.95, subd. (d)(3).)

---

[5] Senate Bill No. 775 (2021-2022 Reg. Sess.) (SB 775), effective January 1, 2022, amended section 1170.95 by, inter alia, *(Fn. is continued on the next page.)*

15

### B. Analysis

We conclude the trial court erred in denying appellant's section 1170.95 petition without issuing an order to show cause. Appellant undisputedly was convicted under a felony murder theory, and her petition alleged: (1) she was not the actual killer; (2) she did not act with the intent to kill as an aider and abettor; and (3) she was not a major participant in the underlying robbery, and she did not act with reckless indifference to human life. If these allegations are true, appellant could not be convicted of murder after SB 1437's amendments to section 189, subdivision (e), and she is entitled to resentencing. (See § 1170.95, subd. (a)(3); Stats. 2018, ch. 1015, § 3.) The court was required to accept appellant's allegations as true, and to issue an order to show cause, unless readily ascertainable facts from the record of conviction refuted her allegations as a matter of law. (See *Drayton*, *supra*, 47 Cal.App.5th at 980; *Lewis*, *supra*, 11 Cal.5th at 974.) Below, we conclude nothing in the record of conviction did so.

---

adding the quoted language regarding the insufficiency of a finding of substantial evidence to render a petitioner ineligible for relief. (Stats. 2021, ch. 551, § 2.) This amendment was consistent with the holdings of most courts that had considered the issue of the standard of proof at the evidentiary hearing. (See, e.g., *Clements*, *supra*, 75 Cal.App.5th at 283, 293 [on transfer from Supreme Court for reconsideration in light of SB 775, court noted SB 775 "reaffirm[ed]" its prior conclusion that substantial-evidence standard did not apply at evidentiary hearing].)

16

We disagree with the trial court's conclusion that appellant's allegations were refuted as a matter of law by the jury's pre-*Banks* felony-murder special circumstance finding. This issue, which has divided the Courts of Appeal, is pending review in our Supreme Court.[6] Mindful of the conflicts in the law, we continue to follow the *Torres* line of cases. Under those cases, the jury's pre-*Banks* special circumstance finding did not preclude appellant's eligibility for relief under section 1170.95 as a matter of law, because "'the factual issues that the jury was asked to resolve [in a trial that occurred before *Banks* and *Clark* were decided] are not the same factual issues our Supreme Court has since identified as controlling.'" (*People v. Mejorado* (2022) 73 Cal.App.5th 562, 571, review granted March 23, 2022, S273159, quoting *People v. Smith* (2020) 49 Cal.App.5th 85, 93, review granted July 22, 2020, S262835; see also *Torres, supra*, 46 Cal.App.5th at 1179, rev.gr.)

We further conclude that our opinion in *Gonzalez I* does not render the *Torres* line of cases inapposite. In applying the substantial evidence standard of review in *Gonzalez I*, we determined only that the jury reasonably

---

[6]     Our Supreme Court has granted review in *People v. Strong* (Dec. 18, 2020, C091162) [nonpub. opn.], review granted March 10, 2021, S266606, to resolve the issue whether a felony-murder special circumstance finding made before *Banks* and *Clark* precludes a defendant from making a prima facie showing of eligibility for relief under Penal Code section 1170.95. (*Strong*, S266606, Supreme Court Mins., Mar. 10, 2021.)

17

*could have* found that appellant engaged in conduct proscribed by the special circumstance statute as interpreted in *Banks* -- not that the jury necessarily did so. (See *People v. Morales* (2020) 10 Cal.5th 76, 88 [court applying substantial evidence standard """"presumes in support of the judgment the existence of every fact the trier *could* reasonably deduce from the evidence"""" (italics added)]; *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1008 ["In assessing how the evidence reasonably could have been evaluated by the trier of fact, an appellate court . . . must indulge reasonable inferences that the trier of fact *might have* drawn from the evidence" (italics added)].) Thus, our substantial-evidence analysis did not resolve the ambiguity central to the reasoning of the *Torres* line of cases; it remains unclear whether the jury decided "'the same factual issues our Supreme Court has since identified as controlling.'" (*People v. Mejorado, supra,* 73 Cal.App.5th at 571, rev.gr.)

Because neither the jury's pre-*Banks* special circumstance finding nor anything else in the record of conviction refuted appellant's allegations as a matter of law, we conclude the trial court erred in denying her petition at the prima facie stage. Contrary to the Attorney General's contention, we cannot deem this error harmless by making a new finding of substantial evidence under *Banks* and *Clark*. As subdivision (d)(3) of section 1170.95 makes clear, a finding of substantial evidence of guilt under a still-valid theory is insufficient to render a petitioner ineligible for

resentencing.  (§ 1170.95, subd. (d)(3); see also, e.g., *Clements*, *supra*, 75 Cal.App.5th at 283, 293.)  Regardless of whether the trial record contains substantial evidence under *Banks* and *Clark*, appellant is entitled to an evidentiary hearing, at which the parties may offer new or additional evidence, and at which the trial court will determine whether the prosecution proved beyond a reasonable doubt that appellant was a major participant in the robbery and acted with reckless indifference to human life, or was otherwise guilty of murder under current law. (See § 1170.95, subd. (d)(3).)

In his respondent's brief, filed after the effective date of SB 775, the Attorney General cites subdivision (d)(3), which now clarifies that a finding of substantial evidence at the evidentiary hearing is insufficient to render a petitioner ineligible for relief.  (See Stats. 2021, ch. 551, § 2.) Nevertheless, in urging us to deem appellant ineligible for relief on the basis of a new finding of substantial evidence, the Attorney General fails to address this amendment or the prior caselaw consistent with it.  (See, e.g., *Clements*, *supra*, 75 Cal.App.5th at 283, 293.)  Instead, he primarily relies on three cases that were decided before SB 775 was enacted: *People v. Price* (2021) 71 Cal.App.5th 1128 (*Price*), review granted Feb. 9, 2022, S272572; *People v. Murillo* (2020) 54 Cal.App.5th 160 (*Murillo*), review granted Nov. 18, 2020, S264978; and *People v. Law* (2020) 48 Cal.App.5th 811 (*Law*), review granted July 8, 2020, S262490.  In our view, reliance on *Murillo* and *Law* is misplaced, as neither applied

19

a substantial-evidence standard; instead, each appeared to deem the evidence against the petitioner so overwhelming, even considered in a light favorable to the *petitioner*, as to resolve the relevant factual issues under *Banks* and *Clark* as a matter of law.  (See *Murillo, supra,* 54 Cal.App.5th at 172, rev.gr.; *Law, supra,* 48 Cal.App.5th at 825, rev.gr.)  Although *Price*, in contrast, supports the Attorney General's position that a finding of substantial evidence in support of a pre-*Banks* felony-murder special circumstance finding renders a petitioner ineligible for relief, we disagree with that position for the reasons stated above.

In sum, we conclude nothing in the record of conviction prevented appellant from clearing the "'very low'" bar set by the Legislature at the prima facie stage.  (*Lewis, supra,* 11 Cal.5th at 972.)  Accordingly, we reverse the order denying appellant's petition at that stage, and remand to the trial court with directions to issue an order to show cause and proceed in accordance with section 1170.95.

## DISPOSITION

The order denying appellant's petition for resentencing under section 1170.95 is reversed.  The matter is remanded to the trial court with directions to issue an order to show cause and proceed in accordance with section 1170.95.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

COLLINS, J.

CURREY, J.